(5 App. Div. 346.)

PEOPLE ex rel. COMMISSIONERS OF CHARITIES AND CORRECTIONS
v. SCHILDWACHTER.

(Supreme Court, Appellate Division, First Department. May 22, 1896.)

BASTARDY—CROSS-EXAMINATION OF COMPLAINANT—CHASTITY.

Where complainant in a bastardy proceeding testifies on her direct examination that she had never had sexual intercourse with any person other than defendant, that she had always been virtuous, and that defendant had outraged her while she was unconscious, defendant may cross-examine her for the purpose of showing that she had intercourse with other men.

Appeal from court of general sessions, New York county.

Bastardy proceeding by the commissioners of charities and corrections, on the complaint of Maude M. Halliday, against Charles C. Schildwachter, Jr. From an order of filiation, defendant appeals. Reversed.

For decision on former appeal, see 34 N. Y. Supp. 352.

Argued before BARRETT, RUMSEY, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

David Welch, for appellant.
David Milliken, Jr., for respondents.

BARRETT, J. Upon the hearing the complainant, Maude M. Halliday, testified that she had sexual intercourse with the appellant on the 28th day of November, 1891, and that as the result of this intercourse she became pregnant with child, to which she gave birth on the 13th day of August, 1892. She further testified, also upon her direct examination, that she never had connection with any other person, save the appellant, prior or subsequent to the date of her connection with him. She claimed throughout that she was a virtuous woman, and that she had in fact been outraged by the appellant while unconscious. Upon her cross-examination the appellant's counsel endeavored to show that she had had intercourse with other men prior to her intercourse with the appellant. Every question, however, which he put upon this head, was excluded; and the learned judge distinctly ruled that illicit relations of the complainant with other persons prior to the 28th of November, 1891, or about that time, were inadmissible. This we think was erroneous. The precise question was not whether particular acts of lewdness anterior to

the period of gestation were admissible as independent facts, but whether the complainant's credibility could be assailed in the manner attempted. We think that the prosecution opened the door to this cross-examination. It placed the complainant before the court, upon her own direct and affirmative testimony, as a virtuous woman who had been wronged. As such it asked special credit for her testimony. The appellant surely had a right to shake this testimony by showing that it was false. She had distinctly sworn that she never had intercourse with a man prior to the wrong inflicted upon her by the appellant. If that statement was false, the rest of her testimony would necessarily have been weakened. The defendant had a right to cross-examine her as to anything to which she had testified upon the direct. He was denied that right, seemingly upon an erroneous application of the rule as to particular acts of lewdness. Nor was the error cured by the testimony subsequently adduced by the appellant tending to show the acts of lewdness as to which he was not permitted to interrogate her. The learned judge may well have disbelieved such testimony, and it may not have affected his faith in the complainant's truthfulness. If, however, upon being pressed on cross-examination, she had acknowledged such acts of lewdness, and had thus confessed the falsity of her general and sweeping assertion on the direct, it would certainly have affected the court's judgment as to the rest of her story. That the appellant was prejudiced by these rulings cannot be doubted. The complainant's testimony was supported by but a single witness, one Smith, and this witness merely testified to the defendant's admission that the complainant was respectable, and that he was the father of her unborn child. The only other witness called by the prosecution, one Renshaw, was so palpably untruthful that the learned counsel for the commissioners stated that he considered her testimony of no consequence, and would consent to have it stricken out. As against this case, the appellant produced many witnesses who testified to various acts of misconduct upon the part of the complainant, and some of these witnesses testified to acts of lewdness within the period of gestation. The quantity was here doubtless greater than the quality. But it is difficult to understand, from the learned judge's opinion, whether he believed or disbelieved these people. He says that the appearance and manner of the witnesses in the case, other than Smith, were such that upon their evidence the order of affiliation would not be affirmed. But the only witnesses in support of the order, other than Smith, were the complainant and Renshaw. Was this the evidence which he referred to "as wholly unworthy of credit, and perjured"? Or did he mean the people brought into court by the defendant? It is hard to say. He seems to have placed his judgment almost entirely upon the defendant's admission to Smith, holding that that admission sufficiently supported the complainant's testimony. We think it apparent, therefore, upon a careful survey of the record, that the complainant's credibility—the weight to be given to her testimony—was crucial, that the defendant had a right to subject her to cross-examination

as to any fact which she had stated upon her direct testimony, and that the denial of this right was not only erroneous technically, but, under the circumstances of this case, prejudicial.

The order should therefore be reversed, and the proceedings remitted to the court of general sessions for a rehearing.     All concur.

Argued before BARRETT, RUMSEY, WILLIAMS, PATTERSON, and O'BRIEN, JJ.